Curia, per

Evans, J.
By the Act of 1788, which is copied in the Act of 1825, the commissioners of roads have “full power to cut down and make use of any timber, wood, earth, or stone, in or near any highway, See. for the purpose of repairing the same, as to tl;em shall seem necessary.” The only restriction on this power is contained in the Act of 1826, which prohibits the use of rail-timber, where other and adequate timber can be had, at or near the same place. For obstructing and opposing a commissioner of roads in the exercise of the powers granted him by this Act, the defendant was indicted, and on the trial, convicted. On the hearing of the case in this court, it was contended that the Act under which the commissioner acted, was unconstitutional and void. If this be so, then the defendant was justifiable. If not, he was properly convicted, and the motion must be refused. The general power of the Legislature to appropriate private property for any and every public use, against the will of the owner, and without compensation, is not involved in this case; every thing which is said in this opinion must, therefore, be considered as applying exclusively to the case before the court. The defence of the de-. *102 fendant is founded on tbe assumption, that the commissioner had no right to use his timber to repair the bridges on the road, without making him compensation.
Until the question was gravely made in this case, 1 had supposed it was the well settled law of this State, that the Legislature had the power to order roads to be opened, and to use so much timbet, earth, or rock, as was necessary to keep the road in repair; and to do this contrary to the jvill of the owner, and without making previous compensation. This question was first discussed in the case of Lindsay vs. The Commissioners of Streets, but the court was equally divided, and the plaintiff failed in his application for a prohibition. 2 Bay, 38. But in the case of Ford vs. Whitaker, involving directly the question, whether the commissioner, Whitaker, had the power to open a road through Ford’s tract, the point was conceded by the counsel, arid treated as a settled question by the court.
In tbe case of Eaves vs. Terry, which was an action against a commissioner for cutting down the plaintiff’s trees, the defendant justified the act, for the purpose of repairing the road. His defence was sustained, although the trees were within the enclosed grounds of the plaintiff. The general right of the commissioner to use timber, was not questioned by fhe counsel or any member of the court, 4 M’C. 425. The judge who delivered the opinion of the court says, “that since Lindsay’s case, the constitutional right to exercise this power purely for public purposes, has not, as far as 1 can learn, ever been seriously doubted.” 2 Bay, 38. In all these cases, the authorities referred to are Singleton’s case, and Withers’ case, neither of which are reported.
But in the case of Singleton vs. The Commissioners of Roads, the court say the question had been settled on a former occasion, referring to these pases as authority. 2 Nott & M’Cord, 526. The case of Dunn vs. The City Council, was a case where compensation was directed, and is not therefore analogous to this. 1 Nott & M’Cord, 387. In the pase of Starke vs. M’ Gowen, the power in the Legislature was expressly recognized; and in the case of Patrick Manigault vs. The Commissioners of Cross Roads, the question was directly made and decided. 4 M’Cord, 543,
But it has been argued, that all these cases, as well as the annual legislation for laying out roads, are a violation of the constitution, and therefore of no authority.
Is there any force in this argument 1 Has the legislature for the last forty-five years been annually passing laws in violation of the constitution and has the judiciary been participes criminip in this violation, by cap, rying these laws into effect!
*103 In the investigation of this subject, I do not propose to inquire whether the defendant, or any other person, may not have a just claim for compensation, who has contributed, in this way, beyond his equal portion of public burthen. All I mean to say is, that he has no constitutional right to demand compensation, as a condition precedent to the use of his property. The propriety of compensation, where the injury has been great,'" seems to have been recognized by the Legislature in the case of Mr. Alston, who was paid for his land appropriated to the public use by running a road through his rice plantation on Waecamaw.
That part of the constitution which it is supposed restrains the exercise of the power here contended for, is the 2d section of the 9th article, which is in these words ; “No freeman of this State shall be taken, or imprisoned, or deprived of his freehold, liberty, or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or the law of- the land.” These latter words, “law of the land,” it is contended, are a restraint on the exercise of the power as claimed and exercised by the legislature. I would remark here, that a road is but an easement, or, as it is sometimes called, a servitude. The owner is not deprived of his right of soil; if the road be discontinued, the owner may then appropriate it to his exclusive use. It might be sufficient for the purposes of this case, to say, that this question has been decided in all the cases above referred to, and especially in the case of Patrick & Manigault vs. The Commissioners of Cross Roads, where the question was made and discussed by the learned judge who delivered the opinion of the court. 4 M’Cord, 441. Independently, however, of authority, it seems to me the proposition can be sustained by well settled and recognized principles. The words “law of the land,” the framers of our constitution borrowed from magna ¿harta; their meaning and import have been frequently discussed, but commentators are not agreed in the true construction. What others more competent have failed to effect, I shall not attempt.
That this clause of the constitution, as well as magna ¿harta, intended to guard the life, liberty, and property of the citizen, against the exercise of any new or arbitrary power, I can entertain no doubt; and so far all the commentators are agreed. If this were a new power claimed by the Legislature, and now for the first time attempted to be exercised, it might be a grave question, whether the right of eminent domain would authorize the appropriation of private property for any public use, unless the Act making the appropriation contained a provision for compensation. Such seems to have been the opinion of Chancellor Kent. 2 Kent’s Com. 275. But this is not the fact. This power has been recognized *104 and exercised from the first settlement of the country. The first Act upon this subject was passed, as appears from the index prefixed to Judge Grimke’s collection of Public Laws, in 1682; and from that time to this, scarcely a year has passed without the passage of some law for laying out public roads. As early as 1721, an Act was passed, giving to the commissioners of the roads the power to use the adjacent lumber for the repairs and construction of bridges. During all this time, not one word is to be found in any Act on the subject of compensation, except in the Act of 1723, which directs the commissioners to pay for certain description of timber used in the construction of framed bridges, such reasonable price as they may think fit. The same rules of construction are to govern in the interpretation of the constitution, as in other instruments. It is to have effect according to the meaning and intention of its framers. What then did the Convention, which adopted the constitution, mean by the words, “laW of the land 1” In the case of Patrick & Manigault vs. Commissioners of Cross Roads, 4 M’Cord, 544, the court says that “What has long existed, is, under any of the definitions of these words, the law of the land.” It can scarcely be supposed they were intended as a prohibition of power exercised by the Legislature from the first settlement of the State, and under every change of its government, whether proprietary, regal, or republican, and which was exercised at the first session of the Legislature under the constitution, and I believe I may say at every session since. This cotemporaneous exposition, the continued exercise of the power by the Legislature for a period of 150 years, and the various cases which have been decided by the courts, ought, I think, to have put this question to rest. Independent, however, of these, there is still another view, which to me seems equally conclusive. It is to be remembered, that all the grants of lands in this state are derived from the lords proprietors, the crown, or the State. Without the right of ingress and egress, real estate would be of little value. Roads are essential to its enjoyment. When, therefore, land was granted, it was the tacit condition that the grantee should have a way through the surrounding land ; and as a corollary to this proposition, other grantees should have a similar right over his land. B. 1, Tit. 8. There are two things, says Domat, destined for the common use of all mankind : the first, by nature, as seas, rivers, and the like; and the second, by civil polity, as roads, and streets in a town. The existence of roads are essential to the well being of society, and the right to make them, has been exercised by the government of every civilized country.
I think, therefore, it may be considered, that the power here contended for, is a tacit condition of every grant made in this State. Upon this *105 ¿round the question is placed, in some of the cases which have been decided. In Eaves vs. Terry, the decision was put on this ground. “All the cases,” says the judge, “proceed on the ground that there is a tacit reservation in every grant of a freehold of so much as may be necessary for the ordinary purposes of making roads and highways; and as a part of the eminent domain, the Legislature has a right to set it apart for that use, when the public convenience requires it.*’ But it has been said, although this power may be exercised by the Legislature, yet it is not' transferable to the commissioners of the roads, or any other person". In the very nature of things, this power, so' far as it is involved in: this cáse, cannot be exercised otherwise than by the intervention of agents. The Legislature prescribes the rules, but its execution must be intrusted to' others. The law makes it the duty of the commissioner to keep the’ road in repair; and to enable him to perform this duty, vests him with the power of using any forest timber, at or near the highway, or bridge,1 to be repaired,
The other questions were fácts to be decided by á jury, arid' th'eir decision is Conclusive.
The motion is refused.
Johnson, Harper, Earle, O’Neall1,' Butler, and Gantt* CC. and JJ. concurred.
Chancellor Johnston.
I very much doubt whether an authority, especially a general authority, can be delegated to take private property for general use, unless the law authorizing the taking has provided for compensating the owner ; and whether in such case, it is a criminal offence for a citizen to prevent his property from being taken from him. It is a subject of much difficulty ; and very nearly concerns the liberty of the citizen ; and it is a very narrow view of it, to confine ourselves to the present case, or the species of property taken in the present instance, or even to the gresent generation. A law may as well be passed to take cultivated Lees as native timber, of to take the land itself, or the crop growing on it, or the houses erected on the land, as to t ike either ; and if these can be taken without compensation, and it is made a crime to stand on the defensive) where is the liberty of the citizenT
Whenever a safe'practical rule shall be suggested, which,- while it shall guard private rights on the one hand, and shall prevent the functions of government from being vexatiously embarrassed on the other, I shall be prepared cordially to adopt it. At present, I am not prepared to give a definitive opinion upon the subject.
*106 Bat, apart from this consideration, I think the verdict was unwarranted"; The question, to be sure, was fairly submitted to the jury, whether timber adequate to the repairing of the bridges could have been obtained near the spot, without resorting to that, which the defendant forbade the commissioner to take ; but I think the proof was clear — beyond doubt — that there was an abundant supply of such timber.
The commissioner would not put up with that which was adequate* which was alt he had a right to, but was determined to have the very choicest of all that could be found. It would have taken a little more work to put down the oak, so as to prevent its warping, than the pine, which would not warp so readily. But, upon the same principle, he might have claimed the most precious timber known, if it bad happened to grow within reach of his'bands.
The utmost authority the commissioner could lawfully claim, was to take adequate timber. The defendant did not obstruct him in the performance of this, his only lawful authority; but left him at liberty to take such timber* and even pointed it out to him; and it was enough to get this without compensation.
1 am for setting the verdict aside, as grossly against evidence.